JOHN HORKAN *vs.* GEORGE K. NESBITT *et ux.*

Submitted on briefs Oct. 2, 1894.   Affirmed Oct. 11, 1894.

No. 9006.

**Usury under guise of agent's services.**

Loaning money through agents who charge usurious and illegal in-terest under the guise of pretended services rendered the borrower con-stitutes a void transaction.

**Facts showing the transaction usurious.**

Upon the facts in this case, *held*, that the transaction between the par-ties was usurious, and therefore invalid.

**No question for a jury on the evidence.**

*Held*, further, that there was no such conflict of evidence in the case as to require the court below to submit it to the jury.

Appeal by plaintiff, John Horkan, from an order of the Municipal Court of the City of Duluth, *Roger S. Powell*, J., made August 1, 1894, denying his motion for a new trial.

The defendants, George K. Nesbitt and Louise his wife of Duluth on April 24, 1893, gave plaintiff their note for $135 due one month thereafter bearing interest at ten per cent a year and secured its payment by a mortgage on a piano and two brussels carpets. They received a check for the $135 but repaid to plaintiff's agent, William Horkan, ten dollars which he claimed was for his services in making the loan, drawing the papers, examining the goods mortgaged, and searching records for prior incumbrances. The plaintiff resides at Madison, Wis., and furnished the money for his brother, William Horkan of Duluth to loan there on chattel security. Thomas Mullarkey was their brother-in-law and acted as clerk in the office. Defendants paid small sums at various times prior to November 2, 1893 amounting to $65. On June 12, 1894, plaintiff commenced this action of replevin to obtain possession under his chattel mortgage of the piano and carpets. Defendants gave bond and retained possession. They answered claiming the mortgage to be void for usury. On the trial the defendants gave no evidence. The Judge instructed the jury to return a verdict for defendants. Plaintiff excepted and afterwards moved for a new trial. Being denied he appeals.

*White & McKeon*, for appellant.

There is no proof that plaintiff had anything to do with the receipt of the ten dollars or knew anything whatever about it. The contention of the plaintiff is that the receipt of the ten dollars by his agent did not render the transaction void for usury. That the testimony of the receipt of it in payment for his services by the agent was competent to go to the jury on the question of usury, but the court could not properly direct a verdict for defendants. The evidence made it a question for the jury and the court erred in directing a verdict. *Stein* v. *Swensen*, 44 Minn. 218; *Lewis* v. *Willoughby*, 43 Minn. 307; *Acheson* v. *Chase*, 28 Minn. 211; *Avery* v. *Creigh*, 35 Minn. 456; *Jordan* v. *Humphrey*, 31 Minn. 495; *Strait* v. *Frary*, 33 Minn. 194; *Mackey* v. *Winkler*, 35 Minn. 513.

*Fryberger & Johanson,* for respondents.

This is the familiar story of a nonresident principal in conjunction with a resident general agent attempting to loan money in this state at a usurious rate of interest, and at the same time to avoid the penalties of so doing. The evidence is undisputed that William Horkan was the general agent of the plaintiff for the purpose of loaning his money, having full power and authority to make loans at his discretion.

William Horkan testified as follows: "On April 24, Nesbitt came in my office and said he wanted $125. He said in regard to the interest or bonus we might charge him it was no object, because he would get a lot of money out of the purchase he was making, that he would only want it ten days or two weeks. I told him in that case I would give him the money for two weeks and charge him nothing for it. He said he didn't want it that way, he would pay $20 for it. I said we couldn't take those rates, were not allowed to take it. He finally said he would pay $10 for two weeks. I said we didn't make loans for less than a month, that he could have it a month for $10."

The witness Mullarkey attempted to prove later on that the $10 charged as a bonus was for services, but his testimony is nullified by his statement that he did not know anything about the contract for the loan, as follows: "I do not know what arrangement Mr. Horkan had but when I drew up the papers for $135 Nesbitt paid me $10 for drawing the papers."

When the contract is essentially usurious it matters not whether the money loaned belongs to the general agent or to the alleged principal. It is void in either case. *Kemmitt* v. *Adamson,* 44 Minn. 121; *Stein* v. *Swensen,* 46 Minn. 360; *Hall* v. *Maudlin,* 58 Minn. 137.

If the party who made the loan is the general agent of his principal the presumption is that a bonus taken by the agent is taken by the authority or consent of the principal, and the burden is on the principal to show that the bonus was not taken by his authority. *Hawkins* v. *Sauby,* 48 Minn. 69; *Stein* v. *Swensen,* 44 Minn. 218.

To overcome the presumption that a general agent takes unlawful interest by the authority of his principal it is not sufficient to show

that the principal never had any knowledge of the particular transaction, or never derived any benefit from such excessive interest or bonus, for such testimony may be entirely truthful, and yet the general agent may have been duly authorized to take such bonus when he made loans. *Acheson* v. *Chase,* 28 Minn. 211; *Lewis* v. *Willoughby,* 43 Minn. 307; *Stein* v. *Swensen,* 44 Minn. 218; *Adamson* v. *Wiggins,* 45 Minn. 448; *Avery* v. *Creigh,* 35 Minn. 456.

BUCK, J. Only two questions are involved in this action, viz. one of usury, and the other as to whether the court below erred in withdrawing the case from the jury, and directing a verdict for the defendants.

1. Within the rule laid down by this court in the case of *Kemmitt* v. *Adamson,* 44 Minn. 121, (46 N. W. 327,) and the case of *Hall* v. *Maudlin, ante, p.* 137, (59 N. W. 985,) we are of the opinion that the transaction between the parties was usurious. The plaintiff, John Horkan, was a nonresident of this state, having a brother, William Horkan, who resided at Duluth, and who was the general agent and general manager for plaintiff in loaning money for him on chattel and real estate mortgages.

The defendants are husband and wife, and the husband, George K. Nesbitt, on the 24th day of April, 1893, applied to William Horkan for a loan of $125, stating to him that the interest or bonus which would be charged him was no object, as he expected to get a lot of money out of it, and would only want it for ten days or two weeks, and that he would pay $10 for two weeks. William Horkan answered him, and said, "I said we did not make loans for less than a month; that he could have it a month for $10." In pursuance of this agreement, the defendants made their note to plaintiff for $135, dated April 24, 1893, drawing interest at the rate of ten per cent. per annum, due in one month, and to secure the payment of the note, at the same time, executed a chattel mortgage upon a piano and other personal property, and paid the $10 referred to in the conversation between William Horkan and the defendant George K. Nesbitt.

William Horkan testified that, when he finally closed the deal, "he charged defendants ten per cent. interest, and put in this ten dollars." As we understand the evidence, defendants only received $125, but executed the note and mortgage for $135, which note and mortgage

included the extra $10, the note running to John Horkan, the plaintiff.

The defendants paid from time to time on this indebtedness the sum of $65, the last payment being the sum of $20, paid November 1, 1893. Default having been made in the payment of the balance due, the plaintiff brought an action for the recovery of the mortgaged property, or for the value thereof if a return could not be had. The defendant interposed the defense of usury. Upon the trial the defendant offered no evidence except the cross-examination of plaintiff's witnesses, and, after the plaintiff rested, the court instructed the jury to return a verdict for the defendants.

The appellant contends that the evidence shows that the $10 was paid to one Mullarkey for his services in making out the papers, examining the property, looking up the records, going to the residence of defendants, and taking acknowledgments. Mullarkey was the clerk for William Horkan in loaning money, and the attorney for John Horkan, and his general agent in the loaning and collecting of money, but he testified that he did not know what arrangement Mr. William Horkan had with Mr. Nesbitt about paying the $10. This evidence, considered in connection with the testimony of William Horkan that he told Nesbitt he could have the $125 for one month for $10, before anything was done by Mullarkey, clearly establishes the fact that the $10 was received or charged by William Horkan for the use of the $125 for one month, besides drawing ten per cent. interest, not only on the $125, but upon the $10, for the note was made for $135, while defendants received only $125. That this transaction was usurious is too clear for argument. The note was made out to John Horkan, and so was the chattel mortgage securing it. He is now seeking to enforce that mortgage, not merely for the amount of $125 and ten per cent. interest, but for the full face value of the note, less the actual payments of $65. Instead of repudiating his general agent's usurious agreement, he is trying to enforce it by an action at law. In view of this fact and of all of the evidence, none of which was given by defendants, it is quite immaterial that William Horkan testified that John Horkan had nothing to do with the transaction. When plaintiff's general agent loans only $125, and takes a note and mortgage therefor for $135, running to plaintiff, drawing ten per cent. interest per annum, and which plaintiff receives

.and seeks to enforce, he must abide by all the consequences of a usurious transaction. Loaning money through agents who charge usurious and illegal interest under the guise of pretended services rendered the borrower constitutes a void transaction.

2. A careful review of the evidence leads us to the conclusion that there was no such conflict of evidence as to require the court below .to submit the case to the jury.

The order of the court below is affirmed.

(Opinion published 60 N. W. 132.)