DAYTON, Respondent, vs. DEARHOLT, Appellant.

*April 14 — May 2, 1893.*

*Usury: Payments for procuring loan, etc.*

Plaintiff paid to defendant $60, ostensibly for his services in procuring for her a loan of $300 on which she was to pay interest at the highest lawful rate, and also, when the principal became due, paid him $10 per month for nearly a year, ostensibly for his services in procuring extensions of the loan. In an action to recover the amount of such payments in excess of lawful interest on the ground that they were payments of usurious interest, a verdict for plaintiff is *held* to be sustained by the evidence, which justified the jury in finding either that the money loaned was the defendant's own money or that his father-in-law, whose money he claimed to have loaned, knew and approved of the taking of usurious interest.

APPEAL from the Superior Court of *Milwaukee* County.

This is an action to recover back usurious interest. In July, 1887, defendant lived at Reedsburg, but was doing business in Milwaukee under the name of the Milwaukee Mortgage Loan Company, the business being in charge of one Breuheiser. Plaintiff applied at the Milwaukee office for a loan of $250, July 22, 1887, and signed an application, the material parts of which are as follows:

"Milwaukee, Wis., July 22, 1887.

"*May Dayton* and Geo. Darling, of the city of Milwaukee, Milwaukee county, state of Wisconsin, hereby apply to

Milwaukee Mortgage Loan Company to act as my agent to procure for me a loan of three hundred dollars for six months, with interest at $X$ per cent. per annum, to be secured by chattel mortgage on personal property owned by me, situated at my residence 129 2nd street, and described in a certain chattel mortgage executed by me and bearing even date herewith. And I agree to pay Milwaukee Mortgage Loan Company, for acting as my agent in procuring such loan, and for examining said property and drawing the necessary papers to perfect such loan, if they are able to procure the same, the sum of sixty dollars; they to charge nothing for examining said property, or for services of any kind, unless they procure said loan for me."

Plaintiff was unable to pay the principal when due, and made application for an extension of time, to obtain which she was obliged to sign the following paper, and at the same time pay the defendant or his agent $10: "If the Milwaukee Mortgage Loan Company procure for me extension of loan described in my application No. 477 for one month from the 22d day of January, 1888, I agree to and do pay them ten dollars for their services in procuring such extension for me, I to be at no other expense." In the same way the time was extended, on payment of $10 each month thereafter, for more than a year. Payments were also made on the principal from time to time until the principal was nearly paid.

The plaintiff claimed that the sum of $60 held back by the defendant from the original amount of the loan, ostensibly as pay for services in procuring the loan, and the monthly payments of $10, ostensibly for services in procuring extensions of the loan, were in fact payments of interest on the loan, and she brings this action to recover the amount of such payments of interest exceeding ten per cent. per annum as usurious. It was claimed by the defendant that the true nature of the transaction was shown

Dayton vs. Dearholt.

by the papers; that the payments were in fact payments for services in procuring the loan and extensions thereof; that the defendant acted simply as agent of plaintiff, and procured the money loaned from one Mackey, his father-in-law, who knew nothing of the transaction; and that consequently there was no usury in the transaction. The jury found for the plaintiff for the amount claimed by her to be usurious payments of interest, and from judgment thereon defendant appealed.

For the appellant the cause was submitted on the brief of *Austin & Hamilton.* They cited *Mackey v. Winkler,* 35 Minn. 513; *Acheson v. Chase,* 28 id. 211; *Ammerman v. Ross,* 84 Iowa, 359; *Nichols v. Osborn,* 41 N. J. Eq. 92; *Brigham v. Myers,* 51 Iowa, 397; *Ballinger v. Bourland,* 87 Ill. 513; *Palmer v. Call,* 7 Fed. Rep. 737; *Ottillie v. Waechter,* 33 Wis. 257; *Fay v. Lovejoy,* 20 id. 407.

*W. J. McElroy,* for the respondent, cited *Cooper v. Tappan,* 9 Wis. 361; *Root v. Pinney,* 11 id. 84; *Kemmitt v. Adamson,* 44 Minn. 121; *Sherwood v. Roundtree,* 32 Fed. Rep. 113; *Harris v. Boston,* 2 Camp. 348; *De Forest v. Strong,* 8 Conn. 519; *Bartlett v. Williams,* 1 Pick. 294; *Lewis v. Willoughby,* 43 Minn. 307; *Lombard v. Gregory,* 81 Iowa, 569; *Burhans v. Burhans,* 1 N. Y. Supp. 37; *Thompson v. Ingram,* 51 Ark. 546; *Payne v. Newcomb,* 100 Ill. 611; *Banks v. Flint,* 54 Ark. 40; *Fowler v. Equitable T. Co.* 141 U. S. 384; *Tyson v. Pickard,* 3 Harr. & J. (Md.), 109, 5 Am. Dec. 424; *Sanford v. Kane,* 133 Ill. 199; *Adamson v. Wiggins,* 45 Minn. 448; *Rogers v. Buckingham,* 33 Conn. 81; *Martin v. Webb,* 110 U. S. 14; *McFarland v. Carr,* 16 Wis. 259; *Lee v. Peckham,* 17 id. 383; *Central Bank v. St. John,* id. 157; *Grant v. Merrill,* 36 id. 390; *Dade v. Spalding,* 54 N. W. Rep. (Minn.), 591.

WINSLOW, J. The question is, Did the evidence justify the jury in finding that the transactions in question were

usurious? "It is entirely immaterial in what manner or form, or under what pretense, the usury was exacted and paid. The contract will not be held good merely because upon its face and by its words it is free from taint, if substantially it be usurious. Courts look at the substance of the transaction, without regard to the shifts by which it is endeavored to avoid the provisions of the statute." *Lee v. Peckham*, 17 Wis. 383. Looking at the transactions in this case in the light of this general rule, we agree entirely with the jury that the carefully worded contracts and applications, by which it is made to appear that the defendant was acting as agent only for the plaintiff, and receiving the moneys in question for services as such agent, were in fact but the flimsiest of shifts and devices by which the real character of the transaction was expected to be concealed. They were the stereotyped contrivances of the usurer. We have little patience to discuss the evidence. If the jury came to the conclusion that Mackey knew and approved of the taking of usurious interest, there was sufficient evidence to justify them in so finding. According to *Dearholt's* own evidence, his agency for Mackey was of long standing. He loaned and reloaned Mackey's money, and used his own judgment as to the character of the loans. He sent him monthly statements of such loans, which were numerous. *Dearholt* says: "He [Mackey] was to receive a legal rate of interest for his money, and he allowed me to loan it to parties, *for which they were willing to give me a commission.*" Mackey was his father-in-law, and their business relations seem to have been of the most intimate nature. That he knew of the nature of *Dearholt's* loans can hardly be a subject of doubt. On the other hand, there was also ample evidence from which the jury would be justified in finding that Mackey was merely a man of straw, and that the money loaned was in fact the money of *Dearholt*. Mackey died February 15, 1889, before the payments

had all been made on the note. His administrator never had possession of the note, and never received any money from this loan. Since Mackey's death, *Dearholt* says he has accounted to his wife (Mackey's daughter) for the proceeds collected after her father's death. She was not, of course, entitled to these moneys as heir of her father, because the personal property passed to the administrator. The plaintiff's evidence is positive that she borrowed the money of defendant under an agreement to pay $10 per month interest. Transparent subterfuges are abundant in the evidence which tend to confirm the idea that *Dearholt* was in fact the real party in interest. If the jury reached either of the conclusions above indicated, the verdict was right.

The charge of the court was fair, and certainly not too favorable to the plaintiff. We have discovered no error.

*By the Court.*— Judgment affirmed.