# RICHARDS *v.* BIPPUS.

HUSBAND AND WIFE; ESTOPPEL; BILLS AND NOTES; USURY.

1. Where, in a suit by a married woman on a note payable to her, her un-contradicted testimony is that the money loaned was not acquired by gift from her husband, but was her separate property acquired from the sale of her real estate in Georgia, it will *probably* not be presumed, in the absence of proof of the law of Georgia relating to the property rights of married women, that the common-law rule which would make the proceeds of such a sale the property of the husband, prevails in that State; or that the husband's acquiescence to the wife's claim to the money after its receipt makes it hers by gift or conveyance from him, within the meaning of R. S. D. C., Secs. 727–729.

2. Where one borrows money from a married woman and gives his promissory note for it, payable to her and not to her husband, and is given credit for payments made upon it, and has no pretense of set-off or counterclaim against the husband, he is estopped to deny her capacity to sue on the note for the sole purpose of avoiding payment of the debt.

3. A promissory note or other obligation is affected with usury if the principal makes the loan knowing that his agent has exacted a bonus or commission, though for his own sole benefit, which, with the interest payable to the principal, would amount to more than the rate permitted by law.

4. In a suit on a promissory note, payable six months after date with interest, where the contract is shown to have been usurious, while recovery can be had of the principal only, interest is recoverable at the rate of 6 per cent. per annum, after maturity of the note; *construing* Sec. 713, R. S. D. C., imposing the rate of 6 per cent. interest per annum upon the loan or forbearance of money; Sec. 714, id., making it lawful to contract in writing for 10 per cent. or less; Sec. 715, id., providing that if more than 10 per cent. shall be contracted for, the whole of the interest contracted for shall be forfeited and the principal only recoverable; and Sec. 829, id., providing that 6 per cent. per annum shall be awarded on all judgments in action upon contracts until satisfied, " and the amount which is to bear interest and the time for which it is to be paid shall be ascertained by the verdict of the jury sworn in the cause."

Note 1051. Submitted April 11, 1901. Decided May 22, 1901.

HEARING on an appeal by the defendant from a judg-

ment of the Supreme Court of the District of Columbia, entered upon the verdict of a jury directed by the court, in an action upon a promissory note. *Modified and affirmed.*

The COURT in its opinion stated the case as follows:

This action was begun by Eunice C. Bippus, as plaintiff, in the Supreme Court of the District, to recover upon a note for $350 executed by Charles S. Richards, September 6, 1894, and payable six months after date to the order of said Eunice C. Bippus, with interest at 10 per cent. per annum. Credits to the amount of $35 were admitted.

In addition to a formal plea of *non-assumpsit,* defendant pleaded, first: That plaintiff was, at the time of the execution of the note, and is now, the wife of one John Bippus, and the cause of action is not in relation to her separate estate; and, second: That the transaction was usurious.

Upon these pleas issue was joined. Plaintiff testified on her own behalf by deposition taken in Colorado. She said that she and her husband, John Bippus, were living in the District of Columbia on and before the date of the execution of the note. She had $300 in money, which was her separate property, derived from the sale of her real estate in the city of Atlanta, Georgia; and that it was not acquired by her, directly or indirectly, by gift or conveyance from her husband.

This money she lent to Richards on September 6, 1894, who executed his note to her for $350.

In reply to the interrogatory, " If you only gave $300, why was the note drawn for $350 ?" she answered: " The loan was negotiated by my husband, Mr. John Bippus, for Mr. Richards, the defendant. Mr. Richards promised to pay Mr. Bippus a commission of $50 for the latter's services in the transaction. As a matter of convenience, this $50 was included in the note and is to be paid to Mr. Bippus by me when the note is paid." John Bippus received the note and delivered it to plaintiff, who thereafter held it.

Defendant testified that he received $300 from John Bippus, who represented the money as his own, and agreed to pay him a bonus of $50 for making the loan; that Bippus wanted the note payable to his wife, " because he had some financial troubles in the South," and defendant executed it as written. He also said that the first payment upon the note was by check for $25 payable to John Bippus, whose letter acknowledging the same was produced, under date October 1, 1896. The letter expressed the hope that defendant would remit more during the month upon the reason, thus expressed, " as my expenses more than eat up my income."

The court refused a prayer for a charge to the jury to find for the defendant if they believed the money received was not the separate property of the plaintiff, and also one that the plaintiff could recover, if at all, only the actual sum lent the defendant less the credits shown. At request of the plaintiff, the court instructed the jury to find for her the sum of $300 with 10 per cent. interest from date to the maturity of the note and 6 per cent. per annum thereafter, less $35 of credits. Defendant excepted to the several rulings of the court and appealed from the judgment rendered upon the verdict, returned in accordance with the instruction aforesaid.

*Mr. W. C. Prentiss* for the appellant:

1. The appellee fails to trace to Richards' hands the money claimed to have been hers. If her husband was the real principal, as the testimony of Richards tends to show, the note in legal effect was payable to him and he could sue alone thereon (*State* v. *Krebs,* 6 H. & J. 37), and title in a stranger would have to be derived through indorsement by him. But the wife claims, not as purchaser, but as payee, and the burden is on her to show that she was the real principal, disclosed or undisclosed. See *Trimble* v. *Thorson,* 80 Iowa, 246.

2. There is no evidence of separate estate. It is incumbent upon the wife to allege and prove the facts establishing

separate estate and giving her a right to sue. *Edwards* v. *Sheridan,* 24 Conn. 165; *Ridgeley* v. *Crandall,* 4 Md. 442; *Barr* v. *White,* 22 Md. 265; *Fiske* v. *Bigelow,* 2 MacA. 427; *Offutt* v. *Dangler,* 5 Mackey, 313; *Foertsch* v. *Germuller,* 9 App. D. C. 357. The burden is upon the wife to establish separate estate, and the presumption is always that money or property belongs to the husband. *Seitz* v. *Mitchell,* 94 U. S. 580; *Reeves* v. *Webster,* 71 Ill. 307; *Johnson* v. *Johnson,* 72 Ill. 489; *Quigley* v. *Swank,* 11 Pa. Sup. Ct. 602; *Hord* v. *Owens,* 20 Tex. Civ. App. 21; *Clark* v. *Clark,* 21 Tex. Civ. App. 371; *Hydrick* v. *Burk,* 30 Ark. 124; *Hewitt* v. *Burritt,* 3 App. D. C. 229; *Edwards* v. *Entwisle,* 2 Mackey, 43.

3. In the absence of proof to the contrary, the property rights of married women in the States will be presumed to be the same as in this District. *Howard* v. *C. & O. RR. Co.,* 12 App. D. C. 300. Or that the common law is still in force. *Van Ingen* v. *Brabrook,* 27 Ill. App. 401; *King* v. *O'Brien,* 33 N. Y. Sup. Ct. 49; *Hydrick* v. *Burk,* 30 Ark. 124. And the burden is still upon her to show how she acquired title, the presumption being that the husband's money purchased. *Quigley* v. *Swank, supra; Clark* v. *Clark, supra; Hydrick* v. *Burk, supra; Storrs* v. *Storrs,* 23 Fla. 274. And this burden is not removed by her answer in the negative to the direct interrogatory — " Was it (the money loaned Richards) or any part of it, acquired by you, directly or indirectly, by gift or conveyance from your husband ? " — for her answer is merely a conclusion of law from facts not disclosed. *Johnson* v. *Johnson,* 72 Ill. 489.

4. If the plaintiff's proof does not wholly fail, it is not conclusive. The appellee's testimony being taken on written interrogatories, the onus is more strongly upon her to disclose the facts. In such case, imperfect and evasive answers go to credibility. Weeks on Depositions, Sec. 504.

5. Had the husband been acting as agent, lending his wife's money, he would, no doubt, have taken a note payable to himself for his bonus, as is usually done in such cases. *Trimble* v. *Thorson,* 80 Iowa, 246.

6. There is no escape from the taint of usury. Viewing the transaction in the light most favorable to the appellee and admitting, for the sake of the argument, that the husband was not principal in the transaction, we have the case of the lender's agent exacting a commission of 33 1-3 per cent. per annum in addition to interest at 10 per cent. per annum, and including the commission in the principal of the note drawn to the order of the lender, with the knowledge and approval of the lender, who accepts the note and sues upon it, claiming the full amount in her declaration and affidavit under the 73d Rule. In *Sullivan* v. *Snell*, 1 MacA. 587, a note for $500 at 90 days, negotiated for $460 to the first holder, was held usurious. A bonus included in the principal of a note is treated as interest, and if, added to the interest expressed, it exceed the legal rate, the transaction is usurious. 27 Encyc. of Law, 1009. Upon the general subject of commissions or bonuses, see *Upton* v. *O'Donahue*, 49 N. W. Rep. 267; *Bank* v. *Flint*, 54 Ark. 40; *Ammondson* v. *Ryan*, 111 Ill. 506; *Borcherling* v. *Trefz*, 40 N. J. Eq. 502; *Meers* v. *Stevens*, 106 Ill. 549; *Sherwood* v. *Roundtree*, 32 Fed. Rep. 113.

*Mr. Thomas M. Fields* for the appellee:

That the matters recited in evidence do not charge the appellee with usury, see Abb. Tr. Ev. 1010, 1011, and cases cited; *Leonhard* v. *Flood*, 56 S. W. Rep. 781; *Dellerby* v. *Goodwyn*, 37 S. E. Rep. 376; *West* v. *Equitable Mortgage Co.*, 37 S. E. Rep. 357. Even a court of equity will not relieve against usury unless the loan with legal interest has been repaid. *Stanley* v. *Gadsby*, 10 Pet. 521; *Chapman* v. *Clark*, 3 Mackey, 185. Even actual usury between Richards and John Bippus, of which the appellee had no knowledge or to which she was not a party, could not affect her. *Moncure* v. *Dermott*, 13 Pet. 345. So the payment of a sum in addition to legal interest, when dependent upon a contingency, does not render the transaction usurious. *Spain* v. *Brent*, 1 Wall. 604. Commissions paid by a borrower to

a third person will not render the loan usurious.   *Grant* v.
*Phœnix Life Ins. Co.,* 121 U. S. 105.

The appellant has suffered nothing whatever from the al-
leged usury.   He has not paid it.   Even the small sum
which he has paid was not applied to the $50 commissions,
as it could have been, but was credited upon the actual money
and interest due from him.   His defense in this cause is
utterly devoid of moral and legal support, and is only an
attempt to avoid what he himself admits to be a just and un-
paid loan by supposed legal technicalities.   The judgment
merged the note, and he can never be called upon by any
person to pay the $50, about his mere agreement to pay
which — not payment or liability for payment — he makes
so much complaint, and by reason of which he seeks to evade
his just debt which he owes to the appellee.   He shows no
case which entitles him to any aid from a court of justice.


Mr. Justice SHEPARD delivered the opinion of the Court:


1. There was no error in refusing the defendant's prayer
for an instruction founded on his first plea.   Plaintiff's
direct evidence that the money lent to defendant was her
separate property, underived by gift or conveyance from her
husband, is assailed as insufficient because it appears that it
was obtained from the sale of her land in Georgia.   The con-
tention is, that in the absence of proof of the law of Georgia
relating to the property rights of married women, the pre-
sumption is that the rule of the common law prevails there;
and that, consequently, the proceeds of the sale of her land
became the property of her husband.   And it is further con-
tended that, if after receiving the money the husband ac-
quiesced in the wife's claim to it, it then became hers by his
gift of conveyance, and was not her separate property under
the statute conferring upon her the right to sue and be sued
concerning the same in her own name as if she were un-
married.   R. S. D. C., Secs. 727, 729.

The positive, and wholly uncontradicted, statement of the
wife that the money lent to the defendant had not been ac-

quired by gift from her husband, but was her separate property in Georgia, was probably sufficient indirect proof, to prevent the raising of the mere presumption of the existence of the common-law rule of property in respect of married women in that State; such presumption being one of evidence merely and indulged only in the absence of all evidence to the contrary.

The defendant, however, was in no situation to make such a defense to the action, and the determination of his contention is not necessary.

At the time he borrowed the money, married women were authorized to contract and to bring suits concerning their separate property as if they were unmarried, and this right of separate property has been widened by the act of June 1, 1896. 29 Stat. 193.

Defendant contracted with plaintiff to borrow the money as her separate property, and his note promised to pay her and not her husband. It does not, therefore, lie in his mouth to deny her capacity to sue thereon for his default, for the sole purpose of defeating an action to which he has no defense whatever. Credits for the only payments alleged to have been made have been allowed in full, and he has no pretense of set-off or counterclaim against her husband.

2. We think that the plea of usury was sustained by the plaintiff's own evidence.

It appears that she intrusted $300 to her husband to be lent to the defendant, and that the rate of interest obtained was the highest that could be lawfully contracted for in the District of Columbia. Comp. Stat. D. C., p. 283. In addition to this, he contracted for a bonus of $50, to be paid by the defendant for obtaining the loan. Now, had he received this bonus in cash, or taken a separate obligation therefor payable to himself, and had received for the plaintiff a note for $300 only and delivered the same to her without her knowledge or approval of the exaction for his own exclusive benefit, her right to recover both the principal and interest of her note would not be impaired. *Call* v. *Palmer,* 116 U. S. 98, 102.

Instead of conducting the affair in the manner aforesaid, he included the bonus in the note with the knowledge and consent of the plaintiff, who promised to pay him the same out of the proceeds of the note when collected. The doctrine established by the weight of authority is this: The note or obligation is affected with usury if the principal makes the loan, knowing that his agent has exacted a bonus or commission, though for his own sole benefit, which, with the interest payable to the principal, would amount to more than the rate permitted by law. 27 A. & E. Encyc. Law, 1006, 1007, and cases cited. See also *Fowler* v. *Eq. Trust Co.,* 141 U. S. 384, 405.

Under the statute regulating interest and punishing usury, and the rule that prescribes the running of the legal rate after maturity, all that the plaintiff was entitled to recover was the principal sum of $300, with interest at the legal rate after the termination of the contract rate, less the credits which she had admitted. Comp. Stat. D. C., p. 283, Sec. 3.

As the judgment follows the verdict, which separates the findings for principal and interest as aforesaid, there is no occasion for reversing it and remanding the case for a new trial, provided the appellee will remit the interest as contracted for from date to maturity.

The judgment will, therefore, be *affirmed with costs, provided the appellee shall within ten days file with the clerk of this court a remittitur of the aforesaid part of said interest. It is so ordered.*

On May 29, 1901, Mr. *Prentiss* for the appellant, filed a motion for a rehearing " upon the question of the effect of usury as to forfeiture of interest and amount recoverable and the question of costs, or for a reconsideration of the condition imposed upon the appellee and the modification of the same so as to require her to enter a *remittitur* of all the interest, with costs to the appellant." In support of this motion he cited, as to the interest: R. S. D. C., Sec. 715; *Starkweather* v. *Prince,* 1 MacA. 144; *Sullivan* v. *Snell,* 1 MacA. 585; R. S. D. C., Secs. 713 and 829; R. S. U. S., Sec. 966;

*Farmers' Bank* v. *Dearing,* 91 U. S. 29; *Brown* v. *Marion. National Bank,* 169 U. S. 416; *Carter* v. *Carusi,* 112 U. S. 478; *Stockham* v. *Munson,* 28 Ill. 51; *Bank* v. *Davis,* 108 Ill. 633; *Bressler* v. *Harris,* 19 Ill. App. 430; *Payne* v. *Waterson,* 16 La. An. 239; *Succession of Rhoton,* 34 La. An. 893; *Chaffee* v. *Heyner,* 31 La. An. 594.

As to the costs, he contended that " Inasmuch as the judgment in the court below carried interest at 10 per cent. for six months and 6 per cent. for six years, amounting to about $125, if the appellee be required to remit the whole interest the appellant will have been substantially successful on appeal and should be allowed his costs as was done in Bressler v. Harris, supra, for the appellant could not have appealed from part only of the judgment; or the costs should be divided, as was done in *Denison* v. *Lewis,* 5 App. D. C. 328, and *Ross* v. *Fickling,* 11 App. D. C. 442."

On June 7, 1901, the motion for a rehearing was denied, Mr. Justice SHEPARD delivering the opinion of the Court:

The motion for rehearing questions the correctness of the conclusion that only a part of the interest upon the principal sum shall be forfeited on account of usury, and asks for a further modification of the judgment rendered, in that respect. In stating that conclusion, a bare reference was made to the statutes in force in the District regulating the receipt of interest upon and without contract and the practice of assessing the same in an action, as inducing the view that the interest forfeited for usury in the contract was that only to which the contract expressly applied and not that which the law gives in the absence, or upon the expiration, of the contract. However, the question was carefully considered though not discussed in the opinion.

The earnestness and force of the argument and the citation of authority, though not sufficient to cause us to change our conclusion, require a statement of the reasons therefor. Section 713, R. S. D. C., imposes the rate of 6 per cent. interest per annum " upon the *loan or forbearance* of any

money, goods, or things in action." Section 714 makes it
lawful to contract or agree in writing for 10 per cent. or any
less sum.    Section 715 reads as follows: " If any person or,
corporation shall contract to receive a greater rate of inter-
est than 10 per cent. upon any contract in writing, or 6 per
cent. upon any verbal contract, such person or corporation
shall forfeit the whole of the interest so contracted to be
received, and shall be entitled only to recover the principal
sum due to such person or corporation."

If there were no other statutory provision relating to
interest and its recovery, and no settled rule in regard to its
allowance in the rendition of judgment, we should not hesi-
tate to say that section 715 was intended to limit recovery
in all cases of usurious contract, to the principal sum
therein named only.    But it must be considered in the light
of other provisions and of established rules in force when it
was enacted.    Since June 24, 1812, a statute has been in
force which declares that 6 per centum per annum shall be
awarded on all judgments in actions upon contracts until
satisfied, " and the amount which is to bear interest, and the
time for which it is to be paid shall be ascertained by the
verdict of the jury sworn in the cause."    Sec. 829, R. S.
D. C.         ˊ                                          ⁚ ⸲

The practice has always been in this District to direct the
jury to assess interest, at the contract rate, to the maturity
of the demand, where it is not expressly stipulated to run
until paid; and thereafter at the rate established by law.
This practice has been expressly affirmed by the Supreme
Court of the United States.    *Holden* v. *Trust Co.,* 100 U. S.
72.    In that case the note in suit was payable four years
from date with 10 per cent interest, payable semi-annually,
and it was held, that the contract rate terminated at matur-
ity, and the legal rate of 6 per cent. then began.    The court
said: " The rule heretofore applied by this court, under the
circumstances of this case, has been to give the contract
rate up to the maturity of the contract and thereafter the
rate prescribed for cases where the parties themselves have
fixed no rate.    *    *    *    Here the agreement of the parties

extends no further than to the time fixed for the payment of the principal. As to everything beyond that it is silent. If payment be not made when the money becomes due, there is a breach of the contract, and the creditor is entitled to damages. Where none has been agreed upon, the law fixes the amount according to the standard applied in all such cases. It is the legal rate of interest where the parties have agreed upon none. If the parties meant that the contract rate should continue, it would have been easy to say so. In the absence of a stipulation such an amendment cannot be inferred." In a previous case arising under a territorial law, it had been said: " The contract being entirely silent as to interest, if the notes should not be punctually paid, the creditor is entitled to interest after that time by operation of law, and not by any provision in the contract." *Brewster* v. *Wakefield,* 22 How. 118, 127. See also *Shepherd* v. *Pepper,* 133 U. S. 626, 653, 654.

Had the note in this case not been rendered usurious by the commission exacted in addition to the maximum rate of interest permitted by law, the verdict would necessarily have been for 10 per cent. interest until maturity, and at the rate of 6 per cent. only for the intervening years. The contract for 10 per cent. would expire with the time fixed for payment, namely, six months after date. Interpreting section 715 in the light of the foregoing doctrine and bearing in mind the familiar rule that forfeitures are not favored and must be plainly required, we think it clear that the forfeiture of the " whole of the interest so contracted to be received," means what it says — the interest of the contract, and not that imposed by the preceding section where there has been no contract, or, as interpreted, where the contract has by its terms ceased to operate.

Nor do the established rules of construction require the forfeiture, thus expressly limited, to be extended by the succeeding words, to the effect that the recovery shall be only the principal sum due. The purpose of these words is fully met, and their reconciliation with those preceding is made complete, by regarding them as intended to remove any pos-

sible doubt that the forfeiture applies not only to the usurious excess but also to the lawful interest included in the contract rate, as long as the contract shall govern. To give a more extended meaning would be to create a forfeiture by an uncertain and unnecessary inference. The law does not vitiate the loan or destroy the obligation to repay the principal on account of the usury. It contents itself with forfeiting all of the interest contracted for, if unpaid, or with permitting its recovery, if paid, by action begun within one year after payment (Sec. 716).

When the interest contract period expires, the penalty ends. The parties still occupy the position of debtor and creditor in respect of the principal of the loan. When the note in this case matured, the defendant could avoid the interest and commission, but remained under legal obligation to pay the principal on that date. It was his duty to pay, and his default entitled the plaintiff to damages. In liquidation of these damages, or by way of compensation for the plaintiff's forbearance of the prosecution of his lawful demand when mature, the statute arbitrarily prescribes a rate of 6 per cent. per annum before and after judgment.

Two decisions of the Supreme Court of the District, in general term, have been cited on the brief as giving an interpretation of section 715 in conflict with the views above expressed. *Starkweather* v. *Prince,* 1 MacA. 144, and *Sullivan* v. *Snell,* 1 MacA. 585. The first of these, though relating to the subject of usury, does not touch the question involved. In the second it was said that section 715, in terms, forfeited all interest; but the question was passed with brief mention, and the main consideration was given to other points. The bearing of the settled construction given to sections 713 and 829, upon that of section 715, which we regard as of controlling importance, was not urged or considered.

On the other hand, in a later case in which the usury statutes were again under discussion, though this particular question was not under consideration, the same court, without referring to the former case, expressed its opinion of

the effect of section 715 as follows: " An agreement for more than legal interest involves the forfeiture of the whole interest. But that means a forfeiture of the whole interest referred to in the agreement." *Brown* v. *Clark,* 3 Mackey, 185, 188.

Under a statute substantially like our section 715, the Supreme Court of Illinois seems to have held for years that a judgment for no more than the principal sum could be recovered. But the rule seems also to have prevailed that the contract governs the rate of interest after, as well as before maturity in that State. Subsequently, a divided court overruled the former decisions on the express ground that the interest of the contract ended with its maturity (*Bank* v. *Davis,* 108 Ill. 633), as has always been the settled rule in this District. That decision has itself been overruled. *Bressler* v. *Harris,* 19 Ill. App. 430; S. C., 119 Ill. 467, 473. As we have heretofore said, if it were not for that settled rule, we would take a like view of the effect of the forfeiture.

But one of the decisions of the Supreme Court of the United Sates that have been called to our attention, arose in the District. *Carter* v. *Carusi,* 112 U. S. 478. But that did not involve the construction of section 715, and sheds no light upon it.

Other cases arose under the provisions of the national banking act, which forfeit " *the entire interest* which the note, bill or other evidence of debt *carries with it,* or *which has been agreed to be paid thereon.*" Sec. 5198, R. S.; *Brown* v. *Marion National Bank,* 169 U. S. 416, and cases cited.

It is to be remarked, however, that in the above case, the court declared the plaintiff entitled to recover the principal of his debt with legal interest from the commencement of the suit. There is nothing in the statute authorizing this recovery of interest, and hence it would seem to rest solely upon the conclusion that the maker of the note, being in default at least from the time of legal demand, must answer in damages therefor. In the District, as we have seen, the statute imposes 6 per cent. by way of damages for the breach

20

of the contract at maturity, and gives that rate for the creditor's forbearance.

For the reasons given, we must adhere to the conclusion heretofore stated, and decline to modify the judgment pronounced.

The motion is, therefore, *denied.*