**SEARL et al. v. EARLL.**

No. 646.

Municipal Court of Appeals for the District of Columbia.

Nov. 18, 1948.

Arthur J. Hilland, of Washington, D. C., for appellants.

H. Max Ammerman, of Washington, D. C. (Louis Ottenberg, of Washington, D. C., on the brief), for appellee.

Before HOOD and CLAGETT, Associate Judges, and NEILSON, Associate Judge, The Municipal Court for the District of Columbia, sitting by designation.[1]

CLAGETT, Associate Judge.

The plaintiff below sued for the unpaid balance of $1,564.58 and interest on an un-secured promissory note of $2,000, signed by defendants August 14, 1943. He was met with the defense of usury and a counterclaim of $3,000 for alleged breach of faith while he acted as defendants' agent. The trial judge in a memorandum opinion found that the evidence did not support the defendants' claim of usury and gave judgment for plaintiff in the full amount requested; and also found for plaintiff on defendants' counterclaim. Defendants on this appeal assign as error the alleged failure of the trial court to make any ruling on the defense that the plaintiff was guilty of fraud; and also the ruling that the evidence did not support the defense of usury.

It appears from the record that sometime prior to July 22, 1943, defendant Everett A. R. Searl approached plaintiff Earll, a licensed real estate broker, to secure a loan of $18,000 on unimproved real estate. The parties had transacted similar business over a number of years and had negotiated some ten or more loans. Plaintiff stated he might be able to get the money, and there was a general discussion of the transaction. At a later date, plaintiff drafted a letter for the signature of defendant Searl and his wife, which authorized plaintiff to obtain an $18,000 blanket first trust loan on the unimproved property, and sell two notes owned by defendants at a net price of $2,266.48. In consideration of these services defendants agreed to pay the plaintiff a commission of $2,000 in the form of an unsecured note with interest at 6%, principal and interest payable at the rate of $50 a month.

The letter of authority was signed by defendants on July 22, 1943, and there was no further contact between the parties until the time for settlement. The $18,000 loan incorporated and paid off an outstanding loan of some $8,750 previously negotiated between the parties. The promissory note given by the Searls for the $18,000 loan was made to the order of S. F. Wolstencroft, a "straw party", known by all parties to be Earll's secretary. She endorsed it in blank without recourse and gave it to Earll, who testified that he delivered it to his wife. The note was subse-

---

[1] Code 1940, Supp. V, § 11—771.

quently extinguished by payments of principal and interest made to Earll. Payments on the $2,000 note in controversy were discontinued after thirteen payments, totaling $650, had been made. The present suit for the balance was then instituted.

The Searls' defense of usury was based, first, upon the allegation contained in their answer that the $18,000 loan actually belonged to plaintiff Earll and that since the $2,000 commission was paid to him a usurious charge was made. It is not disputed that if the $2,000 charged as commission were added to the 6% interest charged and paid on the $18,000 loan the result would constitute usury under the District of Columbia statute.[2] However, both plaintiff Earll and his wife claimed and apparently established to the complete satisfaction of the trial court that the money loaned was the sole and separate property of Mrs. Earll, and that he had acted as her agent in this transaction as he had been doing in similar instances for some 25 years. The evidence on this point was so conclusive that the decision of the trial court in this respect is not open to question on appeal.

During the progress of the trial defendants accepted, tacitly at least, the contention that the money loaned belonged to Mrs. Earll, but they thereupon urged, based upon the evidence adduced, the legal principle that where a lender's agent, with the lender's knowledge and approval, takes the borrower's separate promissory note payable to himself for his compensation for obtaining the loan for the borrower, the agent cannot recover on the note from the borrower when the interest on the principal loan plus the agent's commission totals more than the legal rate.

This principle is well established in the law. The leading case on the subject is Fowler v. Equitable Trust Co., 141 U.S. 384, 12 S.Ct. 1, 35 L.Ed. 786, in which the trust company made a loan to Fowler at the legal rate of interest and in addition Fowler, the borrower, paid Johnston, through whom the loan was negotiated, a commission of $100. Johnston received no compensation from the trust company. He testified, however, that shortly before this loan was made he had an understanding with the trust company that he was acting as its agent and that the company was to pay him nothing and that he was to procure whatever pay he had from the borrower. The Supreme Court held the arrangement usurious largely on the ground that the $100 paid to the trust company's agent was a part of the amount which the borrower was required to pay for the use of the money borrowed.

In Richards v. Bippus, 18 App.D.C. 293, 299, a wife intrusted $300 to her husband to be loaned to a third party at the highest rate of interest permissible in the District of Columbia and the borrower agreed to pay the husband $50 as a bonus. Instead of paying the $50 separately the note was made for $350, and the wife testified that she was to pay over the $50 to the husband. The arrangement was held usurious, the court saying: "Now, had he (the husband) received this bonus in cash, or taken a separate obligation therefor payable to himself, and had received for the plaintiff (the wife) a note for $300 only and delivered the same to her *without her knowledge or approval* of the exaction for his own exclusive benefit, her right to recover both the principal and interest of her note would not be impaired," citing Call v. Palmer, 116 U.S. 98, 6 S.Ct. 301, 29 S.Ct. 559. (Emphasis supplied.) The court 18 App.D.C. at page 300 went on to state the rule governing such cases as follows: "The doctrine established by the weight of authority is this: The note or obligation is affected with usury if the principal makes the loan, knowing that his agent has exacted a bonus or commission, though for his own sole benefit, which, with the interest payable to the principal, would amount to more than the rate permitted by law," citing 27 A. & E. Encyc.Law 1006, 1007, and Fowler v. Equitable Trust Co., supra. To the same effect is Whaley v. American Freehold Land Mort. Co. of London, Ltd., 4 Cir., 74 F. 73, 77, 78, wherein the rule is stated as follows:

"But when a lender authorizes his agent to make loans for him under a general arrangement that he must look to the

---

2 Code 1940, § 28—2703.

borrower for his compensation, and such agent for the lender effects a loan, and charges the borrower a commission, this will make the contract usurious, whether the lender knew of the charge or not * * *, for this exaction is by the authority of the lender, the principal." [3] (This rule, of course, applies only when the interest plus the commission exceeds the legal rate.) The burden of proof is upon the borrower to show that the lender knew, or was chargeable with knowledge that his agent exacted a commission from the borrower in excess of the legal rate of interest.[4] However, the mere fact that there is a family or trust relationship between the lender and the agent has not been construed as sufficient to impute knowledge to the lender in the absence of other evidence, even though the lender knew he was not paying the agent.[5] As to what constitutes knowledge by the lender of the charge of a commission by the agent, it is held that such knowledge may be implied as well as actual.[6] It has also been held that the understanding that the agent is to look to the borrower for his remuneration is often deducible from the fact that the lender avails himself of the agent's services without paying anything therefor.[7]

Defendants here urge that circumstantial evidence was conclusive that Mrs. Earll knew of the charging of the commission by her husband while acting as her agent and that since neither Mrs. Earll nor Mr. Earll denied such knowledge on her part the evidence was undisputed and hence that the trial court was bound as a matter of law to hold the transaction usurious.

The evidence relied upon in support of this contention is as follows: Both Mr. and Mrs. Earll testified that he acted as her agent in this as well as in numerous other similar transactions over a period of more than 25 years, including other loans to Mr. and Mrs. Searl. The husband secured these loans for his wife, prepared all necessary papers, attended to the collection of interest and principal without her name ever appearing, and no evidence was adduced showing that she paid him for his services. Plaintiff admittedly handled this and other similar transactions so that the borrower would not know the identity of the lender. For a long period while the husband and wife were conducting such loan transactions together but prior to this particular loan, Mr. and Mrs. Earll maintained joint bank accounts.

---

[3] See also Dodson v. Peck, Tex.Civ. App., 75 S.W.2d 461; Penziner v. West American Finance Co., 133 Cal.App. 578, 24 P.2d 501, affirmed 10 Cal.2d 160, 74 P.2d 252; Jones v. Gay, Sup., 139 N.Y.S. 158; Knoup v. Carver et al., 74 N.J. Eq. 449, 70 A. 660; Clarke v. Havard, 111 Ga. 242, 36 S.E. 837, 51 L.R.A. 499; Union Mortgage, Banking & Trust Co. v. Hagood, C.C.D.S.C., 97 F. 360; Braine v. Rosswog, 13 App.Div. 249, 42 N.Y.S. 1098, appeal dismissed 153 N.Y. 647, 47 N.E. 1105; Dayton v. Dearholt, 85 Wis. 151, 55 N.W. 147; Bliven v. Lydecker, 130 N.Y. 102, 28 N.E. 625; Sherwood v. Roundtree, C.C.S.D.Ga., 32 F. 113; Demarest v. Van Denberg, 41 N.J.Eq. 63, 3 A. 69; Bonus v. Trefz, 40 N.J.Eq. 502, 2 A. 369; Meers v. Stevens et al., 106 Ill. 549; Wyeth v. Braniff et al., 84 N.Y. 627; Bingham v. Myers et al., 51 Iowa 397, 1 N.W. 613, 33 Am.Rep. 140; France v. Munro, 138 Iowa 1, 115 N.W. 577, 19 L.R.A.,N.S., 391; 6 Williston, Contracts (rev. ed.) § 1697.

[4] Friedman v. Bruner, 25 Misc. 474, 54 N.Y.S. 997; Ammerman v. Ross, 84 Iowa 359, 51 N.W. 6; Stillman v. North-

rup, 109 N.Y. 473, 17 N.E. 379; Olmstead v. New England Mortgage Security Co., 11 Neb. 487, 9 N.W. 650.

[5] Agent son of lender; Franzen v. Hammond, 136 Wis. 239, 116 N.W. 169, 19 L.R.A.,N.S., 399, 128 Am.St.Rep. 1079; Ammerman v. Ross, supra; Bonus v. Trefz, supra; Rogers v. Buckingham, 33 Conn. 81. Agent husband of lender: Bovee v. Butters, 92 Minn. 149, 99 N.W. 641; Short v. Pullen, 63 Ark. 385, 38 S.W. 1113; Bingham v. Myers et al., supra (husband collected interest for wife, and applied his bonus in part at least to his wife's support). Miscellaneous: Gantzer v. Schmeltz, 206 Ill. 560, 69 N.E. 584 (agent trustee under deed of trust securing loan); Moore v. Bogart, 19 Hun., N.Y., 227; Condit v. Baldwin, 21 N.Y. 219, 78 Am.Dec. 137 (agent attorney for lender).

[6] Note 21 A.L.R. 854.

[7] Note 21 A.L.R. 860; New England Mortgage Security Co. v. Gay, C.C.S.D. Ga., 33 F. 636, appeal dismissed 145 U.S. 123, 12 S.Ct. 815, 36 L.Ed. 646; Banks v. Flint, 54 Ark. 40, 14 S.W. 769, 16 S.W. 477, 10 L.R.A. 459.

The strongest evidence on the subject of knowledge and approval had to do with the following: Mrs. Earll's $18,000 loan of August 14, 1943, to Mr. and Mrs. Searl was used in part to pay off a previous loan of $8,750 made on December 17, 1941, between the same parties through the agency of Mr. Earll. While Mrs. Earll received a 6% first trust note in this prior transaction for the full amount of $8,750, the sum actually loaned by her was only $7,875; the balance of $875 was deducted upon settlement at the title company and shown on the settlement sheet under the heading "to commission deducted." It was not questioned that this commission was received by Mr. Earll. Books kept by Mrs. Earll showed, and it was admitted at trial, that she received interest at 6% on the face value of the $8,750 rather than on the actual amount loaned of $7,875. A similar practice has been condemned in another case.[8] A bank official testified that only the difference between the amount of the note and the commission, or $7,875, was checked out on December 17, 1941, the date of this transaction, from the joint bank account which was subsequently transferred into the name of Mrs. Earll. It results that in the 1941 transaction Mrs. Earll received from Mr. and Mrs. Searl a note which included not only the money loaned by her at 6% interest but also a commission for 10% of the note. Such transaction was plainly usurious under Richards v. Bippus, 18 App.D.C. 293. Since the $18,000 loan by Mrs. Earll was in part a renewal or refunding of the 1941 transaction, it follows also that, at the very least, Mrs. Earll knew her husband was charging commissions in connection with her loans made to Mr. and Mrs. Searl.[9]

Another circumstance relied upon by defendants to show Mrs. Earll's knowledge was the fact that shortly after the 1943 transaction had been consummated Mr. Earll placed for collection his $2,000 commission note, which is the subject matter of this suit, with the bank used by himself and Mrs. Earll. They both testified that he "sold" the note to his wife and then "repurchased" it after she had received seven out of nine $50 payments made on the note while it was in the bank. Such evidence of Mrs. Earll's knowledge of the commission came after rather than before the transaction was consummated, but it was cumulative in its nature.

We have concluded that in the absence of any denial by Mrs. Earll that she had knowledge that her husband while acting as her agent was charging a commission on this and prior loans made by her to Mr. and Mrs. Searl the evidence was undisputed that she had such knowledge and that the practice was approved by her. It can hardly be questioned that his services in this respect were of direct benefit to her and that such services were of a business rather than a personal nature. He not only provided her with an outlet for her money, but he acted as her collection agent and, by keeping her identity secret, saved her from all annoyance. Indirectly she benefited from his commissions as a member of his household.

Viewing the facts of the present case in the light of the rules of law stated above, it is observed that plaintiff had been operating as his wife's agent for a number of years without remuneration from her for his services. In this particular transaction the conclusion is inescapable that plaintiff was his wife's agent, not after the acceptance of defendants' agency letter but from the date of the previous $8,750 loan. The interests of all the parties were continuing ones, and the $18,000 loan was a mere refinancing of a previous transaction between identical parties with additions. Plaintiff's agency services to his wife were of a continuing nature, and he was recompensed by commissions extracted from the borrowers rather than by her. Under such circumstances, can it be said that Mrs. Earll did not participate in the commissions, benefit from them, or have knowledge of their existence?

---

[8] Earll v. Picken, 72 App.D.C. 91, 113 F.2d 150.

[9] See also 6 Williston, Contracts (Rev. Ed.) § 1688: "Where an obligation originally given for a loan is tainted with usury subsequent renewals thereof will be open to the same defense."

We believe that the charging of the commission plus the charging of 6% interest was the price paid by Mr. and Mrs. Searl for the loan from Mrs. Earll and was made with the latter's knowledge, consent and approval, and that this constituted usury. While the question of such knowledge and approval is primarily one for the trier of the facts, yet here the evidence was such that we believe only one reasonable inference could be drawn therefrom.

■ Plaintiff urges, however, that even if this conclusion might be justified it cannot stand in the present case because the commission note was given to Mr. Earll not only for negotiating the $18,000 loan but also for selling certain other notes and that this sale alone constituted valid consideration for the $2,000 note. But we view this transaction as an entity. While plaintiff's evidence amounted to an admission that he had charged a 10% commission for making this and previous loans to defendants, the amount of the loan was $18,000, the amount of the notes sold was $2,266.40, and Mr. Earll's letter to the title company which closed the transaction stated the $2,000 note was for these "and other services performed." Even if the remainder of the transaction was perfectly legal, it is difficult to see how that part of the consideration can cleanse the illegal portion. Where there is a single consideration for one or more promises and any part of the consideration is illegal, the promises are wholly unenforceable.[10]

In the view that we take of the case, we find it unnecessary to decide the final error assigned by defendants, that the trial court failed to make a specific finding on the issue of whether plaintiff was guilty of fraud by acting as agent both for the lender and the borrower without disclosing to the borrower the dual nature of his agency. The issue was not raised specifically in the pleadings except by inference in defendants' counterclaim, and the trial court made a general finding for plaintiff on such counterclaim. With respect to such counterclaim we conclude that a new trial should be ordered for the purpose of determining what amount, if any, is recoverable by Mr. and Mrs. Searl.[11]

Reversed, with instructions to award a new trial in accordance with this opinion.

[10] See 6 Williston, Contracts (rev. ed.) § 1750 et seq.; Restatement, Contracts § 606.

[11] Hartman v. Lubar, 77 U.S.App.D.C. 95, 133 F.2d 44, certiorari denied 319 U.S. 767, 63 S.Ct. 1329, 87 L.Ed. 1716.