SHEAR CO. v. HALL et al.   (No. 246-3444.)

(Commission of Appeals of Texas, Section B.
Dec. 7, 1921.)

1. Usury ⬦⟲22—Acceleration of maturity of
note for interest held to render note usurious.

Where, to secure a loan for $1,800 for
about 5½ years, with interest at 8 per cent.,
the borrowers executed a note for $1,800, with
interest at 6½ per cent. and a separate note
for interest at the rate of 1½ per cent., ag-
gregating $148.80, payable in installments as
the interest became due, and, on nonpayment of
the first installment, the holder, under a provi-
sion authorizing him to do so, declared the
whole amount due and sold land under a deed
of trust securing the notes for $148.80, the face
of the note, the contract, whether usurious or
not in its inception, was usurious as interpreted
and enforced.

2. Usury ⬦⟲80—Sale under deed of trust void
when made for interest on usurious loan.

A sale of land under a deed of trust to pay
a note given for interest on a usurious loan was
void.

Error to Court of Civil Appeals of Second
Supreme Judicial District.

Action by the Shear Company against J.
A. Hall and others. A judgment for the de-
fendants other than defendant Hall was af-
firmed by the Court of Civil Appeals (215 S.
W. 567), and plaintiff brings error. Reversed
and remanded.

Goodson & Nabors, of Comanche, for plain-
tiff in error.

Smith & Woodruff, of Comanche, for de-
fendants in error.

KITTRELL, J.   While the only question
presented in the application for writ is
whether a certain contract in the form of a
note is, or is not, usurious, yet, to the end
that the relation of that note to other parts
of the contract may be clearly understood,
it is necessary to set forth certain facts ante-
cedent to the execution of the note; and to
do so in chronological order will materially
assist in arriving at an accurate understand-
ing of the case.

On February 24, 1914, J. A. Hall was en-
gaged in the mercantile business at Energy,
in Comanche county, and was in failing cir-
cumstances. It is stated in the opinion of
the court of Civil Appeals that one W. D.
Howell agreed to sell Hall 238 acres of land,
upon condition that the notes to be given by
Hall in payment or part payment should be
applied to the liquidation of Hall's debts, but
it is not explained in the opinion why Howell
made such proposition.

The explanation is furnished by the state-
ment of facts, and is that Howell traded the
land to Hall for the stock of goods owned by
the latter. The recited consideration was
$2,000 in cash, presumably the value of the
stock of goods, and 12 notes, the first 10 being
for $300 each, the first 2 due January 1,
1915, the next 2 January 1, 1916, the next 2
due January 1, 1917, the next 2 January 1,
1918, and the next 2 January 1, 1919; also
one note for $200 due January 1, 1920, and
the last note, or No. 12, due January 1, 1921,
for $1,800, making a total consideration of
$5,000.

The condition that the notes should be ap-
plied to the payments of Hall's debts was
doubtless made to relieve the transaction of
the appearance of a purchase from Hall un-
der such circumstances as might subject the
transaction to the charge of being fraudulent
in law. The notes were in the usual form,
with the customary provision for declaration
of maturity in case of default.

The first 11 notes bore interest from date
at the rate of 8 per cent., and the note for
$1,800 bore interest at the same rate, and
the past-due interest was to bear interest at
10 per cent., and all the notes recited the fact
that a vendor's lien was retained, and con-
tained the usual provisions for maturity in
case of default.

The creditors of Hall, including plaintiff in
error, agreed to take Hall's notes so given to
Howell, and plaintiff in error received notes
numbered 7, 8, 9, and 10 for $300 each. By
an agreement among all of the creditors of
Hall, the Middlesex Banking Company took
up the note for $1,800, the other notes having
been indorsed by Howell without recourse,
and distributed among Hall's creditors, in-
cluding plaintiff in error.

The banking company made a loan to the
extent of $1,800 at 6½ per cent. interest on
its face, and took a deed of trust on the land
designated for convenience as deed of trust
No. 1, which was by its terms made a first
lien on the 238 acres of land. The $1,800 so
obtained was distributed among Hall's credi-
tors, including plaintiff in error. This deed
of trust was made April 27, 1914. The note
was recited to be in lieu of and substitution
for the note for $1,800 given by Hall to How-
ell, and in that way $1,800 in cash was raised.
The note was dated April 27, 1914, and was
payable November 1, 1919, with interest at
6½ per cent., payable annually.

On the same date Hall and wife executed
a second deed of trust designated as No. 2 to
the same trustee, one Chas. L. Kribs, to se-
cure a note for $148.80. It appears that the
rate of interest charged by the banking com-
pany was 6½ per cent., but the note for $148.-
80 represented interest also, or, to state the
facts in the words of the representative of the
banking company:

"That was an 8 per cent. loan. The 1½ per
cent. was as much interest as the other. We

⬦⟲For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

just split it up in two notes. They loaned the money at 8 per cent. interest. They hold the 6½ per cent. note in the East, and the brokers keep the 1½ per cent. It is all interest."

Among Hall's creditors was one John P. Pettit, known as "Uncle John," who was very old, and his son, W. A. Pettit, attended to his business and represented him in all the negotiations out of which the litigation in this case arose, and all the notes except the four transferred to the Shear Company and the $1,800 note were transferred to J. P. Pettit.

Hall made default in payment of the first installment on the note for $148.80, which installment was due November 1, 1914; and, as the lien of the deed of trust given to secure that note was secondary and subordinate to that which secured the note for $1,800, W. A. Pettit bought the $148.80 note, and had it assigned to him on February 25, 1915. He also paid the interest due on the note for $1,800. The note for $148.80 was in form as follows:

"$148.80. April 27, 1914.

"For value received we promise to pay to the Middlesex Banking Company * * * or order * * * in Dallas, Texas, thirteen and 80/100 .on November 1, 1914; twenty-seven dollars on November 1, 1915; twenty-seven dollars on November 1, 1916; twenty-seven dollars November 1, 1917; twenty-seven dollars November 1, 1918; and twenty-seven dollars on November 1, 1919, with interest thereon at the rate of 10 per cent. per annum after due until paid; all payments to be in gold coin of the United States of America of the present standard of weight and fineness. We also agree to pay a sum equal to 10 per cent. on the amount due hereon as attorney's fees if this note is not paid according to its legal tenor and effect and if placed in an attorney's hands for collection. It is hereby agreed that if default is made in the payment of any one of the above installments then all of the principal sums above specified with all arrearages of interest shall, at the election of the holder hereof, become at once due and payable, such election to be made at any time after default, and without notice. This note is given in lieu and substitution of one certain promissory note for the sum of eighteen hundred dollars executed by J. A. Hall to W. D. Howell, dated February 14, 1914, due January 1, 1921, which said note is a vendor's lien on 238 acres of land described," etc.

Pettit declared the note due in full, and in due course a sale was made by a substitute trustee, on April 6, 1915. Pettit paid the banking company, or whoever owned. the note, full value for it when he bought it, and the land was knocked off to his father by the trustee for $148.80, the face of the note. The sale was made subject to the lien of the note for $1,800 held by the banking company. J. P. Pettit, purchaser at the sale under the deed of trust, sold the land to one Foreman for what was equivalent to a cash consideration, and Foreman gave also 5 notes each for the amount of $165, and Foreman was in possession of the property when plaintiff in error brought the action out of which this appeal arose.

The action by plaintiff in error was for judgment on the 4 notes, 7, 8, 9, and 10 held by it, and for foreclosure of the lien as to Hall, Howell, Pettit, and Foreman, and was also in the nature of a direct action against Pettit and Foreman to set aside the sale under the deed of trust, on the grounds, as stated in the application for the writ, that the indebtedness for which said sale was made was usurious, and therefore void; and because the sale was made prematurely, for an indebtedness not then due, and that on account of the fact that said sale was made for an amount in excess of the amount legally due at the time thereof, the sale was irregular and voidable, and should be held for naught.

The case was tried without the intervention of a jury, and judgment was rendered for all the defendants, except Hall, who filed no answer; hence judgment went against him. The trial court held that the contract was not usurious, and that sale was not prematurely made. That judgment was affirmed by the Court of Civil Appeals of the Eighth district. 215 S. W. 567.

[1] Every case involving the question of whether or not a contract is usurious presents one or more features different from those of any other case, and for that reason it is difficult to find a controlling precedent in the form of a case directly in point. ·

The case which we have been able to find that is most directly applicable to the situation before us is that of Dugan v. Lewis, 79 Tex. 246, 14 S. W. 1024, 12 L. R. A. 93, 23 Am. St. Rep. 332. Dugan executed his note for $5,000, payable in five years, and attached to it 5 coupon interest notes. The note contained a stipulation making the principal of the note become due at the option of the holder, upon the failure in payment of any installment of interest within 30 days after it should become due. The date the note was given is not stated in the opinion, but an interest coupon became due December 1, 1887, and the whole amount was declared due, and the property was advertised for sale. Injunction was asked to prevent the sale. The injunction was denied, and Dugan appealed. The main question decided was that the contract was performable in Texas, and was not usurious under the law of this state.

However, the following statement appears in the opinion:

"It is contended that, as the deed of trust provides that, on failure of the borrower to pay said note or either of said coupons, or failure to comply with any of the stipulations contained in said deed of trust, the whole sum of money secured thereby may, without notice to the borrower, at the option of the lender or his assigns, and at his option only, be declared due

and payable at once, and the trustee was authorized to take possession and sell the land; and as default was made in the payment of the coupon due December 1, 1887, and the whole amount was declared due, the whole five years' interest became collectable according to the terms of the contract long before the termination of the five years, thus making the interest reserved greater on the happening of the contingency than 12 per cent. per annum, and the contract usurious under the laws of this state."

In regard to that contention, Judge Henry, speaking for the Supreme Court, said:

"We do not think that a correct construction of the contract will make a greater amount of interest due and collectable upon it than shall have accrued on the principal calculated up to the date of collection at the rate named in the note; or, in other words, that any unaccrued interest comes within the proper meaning of the stipulation.

"In any event, we agree with the conclusion of the judge before whom the cause was tried that said stipulation 'is to be construed as a penalty which will not be enforced except upon canceling the unearned interest notes, and that it does not make the contract usurious.' "

As we construe the language of Judge Henry, it means that it would not have been lawful to have executed the deed of trust in order to collect interest that had not accrued on the debt, and that no accrued interest came within the proper meaning of the stipulation that maturity might be declared in case of default, and the property sold. The only distinction that we can see between that case and the instant case is that the coupon note was annexed to the main note in that case, while in the case before us the main debt was for $1,800, with 6½ per cent. interest, but a separate note secured by a separate and subordinate deed of trust was given to secure a note for $148.80, all of which was admitted was interest at 1½ per cent. for 5½ years on the main debt. That note, as has been seen from the statement of the case, was payable in installments, the first for $13.80, due November 1, 1914, or a few days over 6 months after the note was given, and the rest paid in equal installments of $27 each year for 5 years.

While the note for $148.80 represented brokerage, it was part of the interest on the $1,800 note for 5½ years at 1½ per cent. But one installment, being the first, for $13.-80, was due when maturity of all the installments was declared for failure to pay that installment of $13.80, and the property sold and bought in by Pettit for the exact amount of the note, and therefore unaccrued interest for five years was collected.

But 6 months' interest had accrued on the $1,800, and the borrower had had the use of it for but 6 months. The language of Judge Henry in Dugan v. Lewis is, as has been said, to the effect that no unaccrued interest came within the meaning of the stipulation as to declaring maturity of all the debt, and authorizing sale. That being true, the sale of the property for the sum of all the interest at 1½ per cent. for 5½ years operated to make the contract usurious, since interest to the extent of $148.80 was collected on $1,800 for six months, which was at the rate of more than 17 per cent. per annum.

The note for $148.80 was no part of the original debt. It was only a part of the interest that would accrue in 5½ years. It was extinguished by the sale; therefore it follows that interest for 5½ years was applied to the cancellation of only $13.80, interest accrued.

Whether or not the contract was usurious in its inception, its execution operated to make it usurious, as the beneficiary under it, viz., the holder of the note for $148.80, interpreted it to authorize a sale of the land because of default in the payment of $13.80 interest, and thereby collected the whole interest for the entire 5½ years. If our construction of the holding in Dugan v. Lewis be correct, such unaccrued interest was not within the meaning of the stipulation in the deed of trust.

What we have said leads logically to the conclusion that the contract was usurious, since it authorized a sale of the property to pay unearned interest, of which authority the beneficiary availed himself.

The following language of the very able judge before whom the case of Dugan v. Lewis was tried in the district court, was approved by the Supreme Court:

"The stipulation is to be construed as a penalty which will not be enforced except upon canceling the unearned interest notes, and that it does not make the contract usurious."

The obvious meaning of this holding is that, if a contract be so interpreted as to provide for no cancellation of unearned interest, it is usurious. There was no cancellation of unearned interest in the instant case, but the full amount was collected for 5 years, when interest only for 6 months, or a little more, had accrued. Each of the 5 remaining installments of $27 was, to all legal intents and purposes, a separate note, none of which were canceled, but all were collected. We are of the opinion that the contract was usurious, and that the sale was voidable, at least, and should have been set aside.

We incline, also, to the view that, under the holding in the case of Warren v. Harrold, 92 Tex. 417, 49 S. W. 364, the sale was prematurely made; but, since the case must be remanded to the district court for the reason already given, we express no opinion on the latter point.

We recommend that the judgment of the district court and the Court of Civil Appeals be reversed, and that the case be remanded

to the district court to be tried in accordance with this opinion.

CURETON, C. J. [2] Since the land was sold to pay a note given for interest on an usurious loan, the sale was void.

The judgment recommended by the Commission of Appeals will be entered, and the trial court will be governed by the above holding on another trial.