**FEDERAL MORTGAGE CO. et al. v. STATE NAT. BANK OF CORSICANA et al. (No. 993.)**

(Court of Civil Appeals of Texas. Beaumont. July 5, 1923. Rehearing Denied Oct. 10, 1923.)

**1. Usury 56—Inclusion of brokerage item held to make note usurious.**

Where general agents of loan company received $4,000 as brokerage fee for making $19,000 loan represented by note calling for 8 per cent. interest, the note was usurious under Rev. St. art. 4982, and Const. art. 16, § 11, since the payment of the brokerage to the general agents acting in the general scope of their authority was in effect a payment to the company.

**2. Appeal and error 1068(3) — Error in charge held harmless in view of pleadings and proof.**

In an action to have a note declared usurious, in which the pleadings of the defendants and the testimony of their general officers who acted for the defendants in the transaction showed the note to be tainted with usury, any error in the court's charge on the issue of usury was harmless.

**3. Usury 12—Lenders' retention of part of money held to make note usurious.**

If lenders' retention of a portion of the money was for a lawful purpose, but eventually it was retained for brokerage by which they received more than 10 per cent. for the use of their money, the note was usurious, though the money so retained was included in the note for the first purpose, and the transaction was not usurious in its inception.

**4. Corporations 513(4)—Allegation held to plead responsibility for acts of officers.**

In action to have note declared usurious, an allegation that the "defendants, their agents and employés, acted together in reference to said transactions," held sufficient to plead defendants' responsibilities for the acts of their officers acting as their agents.

**5. Usury 121—Findings of jury in answer to special issues held not conflicting.**

In action to have a note declared usurious, findings in answer to special issues held not conflicting.

**6. Trial 351(5)—Refusal to submit special issue in substance the same as other submitted held not error.**

Refusal to submit a special issue which was in substance and effect a repetition of another question submitted by the court was not error.

**7. Usury 12—Intention of lenders immaterial.**

In determining whether a note was usurious, the intention of the lenders in retaining the money, the retention of which it was claimed made the note usurious, was immaterial if the facts and circumstances made the transaction usurious.

**8. Usury 111(1)—Held sufficiently pleaded.**

In an action to have a note declared usurious, an allegation that $4,000 included in $19,000 note calling for 8 per cent. interest was retained by lenders as a brokerage fee, and that the $4,000 was claimed by the lenders to be an obligation against the borrowers, held a sufficient pleading of usury.

**9. Usury 137—Rule as to recovery of double amount of usurious interest stated.**

The right to recover back double the amount of usurious interest paid arises when such payments are intentionally appropriated by the parties to its discharge, and the party paying is not required to discharge the principal debt due before he can enforce such recovery.

**10. Usury 139—Double amount of brokerage making transaction usurious held not recoverable.**

Where payees did not not intend that the title to the money should pass to the makers, but the amount thereof had been distributed toward discharge of liens on makers' land, the makers could not recover double the amount of brokerage retained by payees making the transaction usurious.

**11. Limitation of actions** ⟐➝148(4)—**Recitals in mortgage renewing notes to be paid by mortgagee held to toll statute.**

Recitations in a mortgage that the note secured thereby was in renewal of notes which the mortgagee was to pay off, and that the mortgagee was to be subrogated to all the rights and liens securing the original holders "or said notes so renewed," *held* to constitute a written renewal of the notes so paid by mortgagee under Complete Tex. St. art. 5695 (Vernon's Sayles' Ann. Civ. St. 1914, art. 5695); the execution of a formal renewal being unnecessary.

Appeal from District Court, Navarro County; Hawkins Scarborough, Judge.

Action by G. A. McElvany and wife against the Federal Mortgage Company, the State National Bank of Corsicana, and others. From the judgment rendered, the defendants other than the State National Bank of Corsicana appeal, and the plaintiffs cross-appeal. Reversed and rendered.

Thompson, Knight, Baker & Harris, of Dallas, for appellants.

L. Treadwell, Richard Mays, and Callicutt & Johnson, all of Corsicana, for appellees.

WALKER, J. This suit is the result of a long series of business dealings among the interested parties, and on a trial to a jury resulted in a verdict, under instructions of the court, in favor of State National Bank against G. A. McElvany and wife for the amount claimed by it, and a foreclosure of its deed of trust liens against certain lands belonging to McElvany and wife against the appellants, the Federal Mortgage Company and the Underwriting Fund of the Merchants' Reciprocal Underwriters, hereinafter designated as underwriters, who were also asserting a lien. So far as this record shows, this was all of the land owned by McElvany and wife, and was covered by all the liens involved in this litigation, and will be referred to simply as their land. As no complaint is made by any one against the judgment in favor of the bank, it is not necessary to give the details of its action, except that it held that part of its claim which constituted a first lien on the land under a transfer and assignment from H. P. Drought & Co.

The issues on this appeal arise under the pleadings of McElvany and wife to have certain transactions had by them with the Federal Mortgage Company and the underwriters declared usurious, and the answers of these companies and their cross-action praying for judgment on their notes and foreclosure of their liens on the same property covered by the liens of the State National Bank. From the record before us, we make the following conclusions of fact:

(1) On January 1, 1917, McElvany and wife owed certain debts, aggregating $13,-334.10, which were secured by a lien upon their lands second to the Drought lien, owned when this case was tried, by the State National Bank, which at that time amounted to about $14,000. On that date, McElvany and wife executed to the Federal Mortgage Company their note for $30,000, and secured it by a deed of trust on their land under an agreement whereby the Federal Mortgage Company was to pay off and take over all the liens against the land, and advance them in money the difference between the amount of the liens and the face of the note. In execution of this agreement the Federal Mortgage Company paid to the holders of the second liens $13,334.10, being the full amount due thereon, and used all reasonable diligence to take up the first lien held by Drought, going to the extent of offering to pay him the interest that would accrue thereon in the future, which would have been about $4,000, but he refused to surrender his notes or to make any settlement except according to terms of the contract. The assignments transferring the second liens to the Federal Mortgage Company were dated January 1, 1917. At that time they were past due.

(2) The deed of trust executed by McElvany and wife to secure the payment of the $30,000 note contained the following provisions:

"The note secured hereby is given in renewal and in lieu of four notes for $500 each, and one note for $12,000 and accrued interest thereon, dated January 2, 1915, due January 1, 1919, 1920, 1921, and 1922, respectively, given by G. A. McElvany and wife to H. P. Drought & Co., and fully described in deed of trust of even date therewith to H. P. Drought, trustee, recorded in the deed of trust records of said county, and in renewal and in lieu of one note for $5,000 dated January 29, 1915, due December 15, 1915, given by G. A. McElvany and wife to Z. N. Foster, and fully described in deed of trust of even date therewith to C. L. Jester, trustee, recorded in the deed of trust records of said county, and in renewal and in lieu of one note for $6,160 and one note for $532.50 and one note for $319.50 and one note for $260 dated December 12, 1916, given by G. A. McElvany and wife to the First National Bank of Kerens, Tex., and fully described in deed of trust of even date therewith to C. L. Jester, trustee, recorded in the deed of trust records of said county, and it is agreed and understood that the Federal Mortgage Company is hereby subrogated to all the rights, liens, equities and remedies securing the original holders of said notes so renewed."

In its efforts to execute its contract with McElvany and wife, the Federal Mortgage Company paid off one of the interest and one of the principal notes held by Drought, and described in the deed of trust just referred to, which, with accrued interest, at the time of the payment amounted to $1,633.05. In

executing its contract, by which the $30,000 note was executed, the Federal Mortgage Company paid off claims in the sum of $15,-000 against the lands of McElvany and wife, all of which items were specifically named in the deed of trust just referred to.

(3) Because of its inability to take over the Drought lien, the Federal Mortgage Company complained to McElvany and wife that it was forced to hold a second lien, which was forbidden by its charter, and, unless they adjusted these items, it would be forced to sue on the claims which it had assumed. However, its general agents proposed to place the loan with the company that could carry second liens, and to charge McElvany and wife for their services in so doing the sum of $4,000, which was to be added to the $15,000 and included in a new note.

(4) At that time certain of the general agents of the Federal Mortgage Company were also general agents of the underwriters. The general agents of these two companies were fully advised that McElvany and wife would pay a commission of $4,000 to a broker for placing this loan. They then agreed among themselves, acting within the scope of their authority as general agents of their respective companies, and for and on behalf of their respective companies, to reduce the $30,000 held by the Federal Mortgage Company to $19,000, which was done without the knowledge or consent of McElvany and wife, and to transfer the $30,000 note in that sum to the underwriters, which was to give its check in payment thereof to the Federal Mortgage Company. That company was to appropriate $15,000 of the proceeds in satisfaction of the claims which it had paid for the account of McElvany and wife, $1,000 for the trouble it had incurred in handling the transaction, and the other $3,000 was to be divided among the general agents and officers of the two companies who had consummated the transaction. All this was done on the 2d day of February, 1919, by the underwriters paying to the Federal Mortgage Company $19,169.30, which represented the $19,000 and accrued interest thereon from January 1, 1919. McElvany and wife had paid all interest to the Federal Mortgage Company as it had accrued. The proceeds of the check of the underwriters were in fact distributed by the general officers of the two companies, who received the brokerage, and who, as witnesses upon the trial of this case, described the $4,000 item as a "rakeoff."

(5) On February 28, 1919, after the above transaction was fully consummated, on the request of one of the general officers of the Federal Mortgage Company, McElvany and wife executed to H. D. Ardrey, as trustee for the underwriters, their promissory note in the sum of $19,000, which they secured by a deed of trust covering their lands. This note and deed of trust bore date January 1, 1919, but were in fact executed on the 28th of February following. On the same day that the note was executed McElvany and wife executed and delivered to the general officers of the Federal Mortgage Company just referred to the following order:

"February 28, 1919.

"Merchants' Reciprocal Underwriters, Dallas, Texas—Gentlemen: You are hereby authorized to disburse the proceeds of the loan of $19,-000.00 which you are making to me, as evidenced by my note dated January 1, 1919, due January 1, 1923, and secured by deed of trust on 1,118 acres of land in Navarro county, Tex., in the following manner, and to the following parties:

"(1) You will pay to the Federal Mortgage Company of Dallas, Texas, the sum of fifteen thousand ($15,000.00) dollars, which is the amount due them on my note to them for thirty thousand ($30,000.00) dollars.

"(2) You will pay the balance of four thousand ($4,000.00) dollars, to R. A. Kelknap and C. R. Miller of Dallas, Texas, which is the amount I have agreed to pay them as a brokerage for securing said loan of nineteen thousand ($19,000.00) dollars from your company, for me.

"Yours truly,    G. A. McElvany,
"Nancy S. McElvany."

(6) On January 1, 1920, McElvany and wife paid to the Federal Mortgage Company, for the use and benefit of the underwriters, $1,-520 as interest on the $19,000 note, which was received by it as interest and appropriated to the payment of one year's interest on that note at the rate of 8 per cent. per annum, being the rate stipulated for therein. In assigning its claim against McElvany and wife to the underwriters, the Federal Mortgage Company guaranteed the payment thereof, promised to take it over at any time that the underwriters might become dissatisfied with it, and further agreed to collect and remit all interest thereon as it matured. It was intended by the parties that the $19,000 note should take the place of all other claims held by the Federal Mortgage Company against McElvany and wife, both the original indebtedness and the $30,000 renewal note, which was not to mature until ten years after date.

(7) McElvany and wife pleaded that the transaction involving the execution of the $19,000 note was usurious; that the $4,000 included in the note was with the understanding that it was to be held as a fund to pay the maturing interest and notes on the Drought claim, but that this agreement was repudiated and the Federal Mortgage Company and the underwriters, acting together through their officers and agents, appropriated this $4,000. The jury found that this $4,000 was included as a brokerage to the general officers of the two loan companies for their services in placing the loan with

them, which was a finding in accordance with the pleading of the appellants and the testimony as given by their general officers. McElvany and wife also pleaded that the interest paid by them on January 1, 1920, was usurious and prayed for a double recovery thereon. The jury found that the $19,000 note was usurious.

(8) As an alternative plea, the two loan companies pleaded the original indebtedness taken over by them on January 1, 1917, and the items paid for the account of McElvany and wife to Drought. In answer to this alternative plea, McElvany and wife pleaded limitation.

(9) Judgment was entered in favor of McElvany and wife sustaining their plea of limitation against the original notes and lien and in favor of the two mortgage companies on the $19,000 note by denying them all interest thereon, allowing against it a credit of $4,000 included as brokerage and $3,040 being double the amount of usurious interest paid January 1, 1920, and on the balance allowing 10 per cent. attorney's fees, with interest at 6 per cent. per annum from the date of the judgment. From this judgment the loan companies have appealed, and McElvany and wife have cross-assigned error.

Conclusions of law:

[1] (1) The inclusion of the $4,000 brokerage item in the $19,000 note made it usurious. The officers of appellant who handled this transaction accepted this note and received as brokerage and distributed to themselves the $4,000 were the general officers of the loan company, acting in the general scope of their authority as such agents. Under these facts, the acts of the agents were the acts of appellants. Insurance Co. v. Stubbs (Tex. Com. App.) 234 S. W. 1099. The payment of a brokerage to the general agents of appellants was, in effect, a payment to themselves for making the loan. The $4,000, in addition to the 8 per cent. stipulated for in the note, made the interest rate exceed 10 per cent. The rule is thus stated in the syllabus to Hall v. Maudlin, 58 Minn. 137, 59 N. W. 985, 49 Am. St. Rep. 492:

"If a money lender intrusts the entire management of his business to a general agent, with unlimited authority to conduct it according to his own discretion, and with the understanding that he is to obtain compensation for his services and expenses as agent by way of commissions or bonuses from borrowers, and the agent exacts usury in making a loan by retaining a commission which, together with the interest reserved, amounts to more than the rate allowed by law, the case stands precisely as if it had been done by the principal personally, and he cannot shield himself behind the pretext that he gave the agent no authority to exact more than legal interest, and that he had no actual knowledge that he was so doing."

See, also, the following authorities: Cheney v. White, 5 Neb. 261, 25 Am. Rep. 487; Philo v. Butterfield, 3 Neb. 256; Tankesly v. Bell (Tenn. Ch. App.) 37 S. W. 1018; Texas Loan Agency v. Hunter, 13 Tex. Civ. App. 402, 35 S. W. 399; 27 Ruling Case Law, p. 338, at section 40; Vahlberg v. Keaton, 51 Ark. 534, 11 S. W. 878, 4 L. R. A. 462, 14 Am. St. Rep. 73; France v. Munro, 138 Iowa, 1, 115 N. W. 577, 19 L. R. A. (N. S.) 391–395; Clarke v. Havard, 111 Ga. 242, 36 S. E. 837, 51 L. R. A. 499; Banks v. Flint, 54 Ark. 40, 14 S. W. 769, 16 S. W. 477, 10 L. R. A. 459; Stein v. Swensen, 46 Minn. 360, 49 N. W. 55, 24 Am. St. Rep. 234, 239; Kemmitt v. Adamson, 44 Minn. 121, 46 N. W. 327; 29 Am. & Eng. Enc. of Law (2d Ed.) p. 505; Revised Civil Statutes, art. 4982; Slaughter v. Eller (Tex. Civ. App.) 196 S. W. 704, par. 13; Const. Tex. art. 16, § 11; Baum v. Daniels, 55 Tex. Civ. App. 273, 118 S. W. 756; Shear Co. v. Hall (Tex. Com. App.) 235 S. W. 195.

[2] (2) If the court's charge on the issue of usury was error, it became immaterial, because under the pleadings of appellants and the testimony of the general officers the $19,000 note was tainted with usury.

[3] (3) The issue of usury was pleaded by McElvany and wife against the $19,000 note. While it is true they pleaded that the $4,000 item was included in the note for the purpose of paying the maturing notes held by Drought, yet they also pleaded that appellants did not consummate that deal, but claimed the item for themselves. This claim on the part of appellants, which they pleaded and was so found by the jury, was what made the contract usurious. Though it may not have been usurious in its inception, if appellants, by the use of the note and their construction of the contract, handled the transaction so as to net them more than 10 per cent. for the use of their money, it thereby became usurious. Shear Co. v. Hall (Tex. Com. App.) 235 S. W. 195.

[4] (4) McElvany and wife did not plead that the officers of appellants who consummated this agreement were its general officers, but alleged only "that said defendants, their agents and employés, acted together in reference to said transactions." If appellants were liable only on the acts of their general agents, this allegation was sufficient as against a general demurrer. Gulf Refining Co. v. Bonin (Tex. Civ. App.) 242 S. W. 776.

[5] (5) In answering issue No. 1, the jury found that the $19,000 note was a usurious transaction. In answering No. 2, it found that the general officers of appellants entered into a conspiracy to take the $19,000 note with the intent of receiving from McElvany and wife "more than 10 per cent. interest on the amount of money actually paid." In answering issue No. 4 they found that the $4,000 was not included in the note for the purpose of paying the maturing interest on notes held by Drought. In answering the fifth,

they found that the $4,000 was a brokerage charge. We have given careful consideration to appellants' assignment that these answers of the jury were conflicting. They seem to us to be in complete accord, without even a suggestion of conflict.

[6] (6) Question No. 4 was submitted to the jury on the issue as to whether or not the $4,000 was included in the note for the purpose of paying the maturing interest and principal of the Drought claim. Appellants requested the same issue, but limited it to interest. The court did not err in refusing to submit appellants' issue, as it was, in substance and effect, only a repetition of question No. 4.

[7] (7) Appellants requested the following issue:

"At the time of the making of the $19,000 note and deed of trust was it the intention of the Federal Mortgage Company and H. D. Ardrey, trustee of the underwriting fund of the Merchants' Reciprocal Underwriters of Dallas, that the amount of $4,000 constituting a portion thereof should be, retained and collected as interest on said loan, or on the original loan of $15,000. Answer 'Yes' or 'No.' "

No question of intent as an ultimate issue was raised in this case. The facts and circumstances under which the $4,000 was included in the $19,000 note made it usury. That result followed, regardless of the intent on the part of appellants.

In Slaughter v. Eller (Tex. Civ. App.) 196 S. W. 704, it was said:

"Any advantage or benefit exacted, which, added to the interest reserved, increases the compensation received for the loan, to an amount in excess of the lawful interest, constitutes usury; and if, as a part of the transaction, the borrower is required to buy or sell property at an exorbitant or inadequate price, and this is a cloak or devise to disguise the true character of the transaction, it will not avail against a plea of usury."

[8] (8) There is no merit in appellants' assignment that the judgment was entered on a theory of usury not pleaded. As we have shown, McElvany and wife alleged that the $4,000 was included in the note and claimed by appellants as an obligation against them. The jury so found, and on that finding the court entered judgment.

(9) The sum of $1,633.05 paid by the Federal Mortgage Company to Drought was in part execution of its contract with McElvany and wife. It was the intent of the parties that it should enter into and become a part of the $30,000 note, and in the deed of trust executed by McElvany and wife it was so recited, and when paid was to be secured under the terms of that lien. We hold that the payment of this sum by the Federal Mortgage Company made it a part of the $30,000 note, and that it was extended and renewed in the deed of trust.

[9] (10) Appellants' eighth proposition is as follows:

"There can be no recovery for a penalty based upon the payment of usurious interest where the party making such payment is under a valid obligation to pay interest upon an existing indebtedness, and interest so paid will be applied to the payment of the valid existing indebtedness."

In support of this proposition they cite International Building & Loan Association v. Biering, 86 Tex. 476, 25 S. W. 622, 26 S. W. 39, where it is said:

"Each payment made upon a contract affected with usury is a payment upon the principal, applied by the law, notwithstanding it was paid and received as payment of interest."

Also they cite Western Bank & Trust Co. v. Ogden, 42 Tex. Civ. App. 465, 93 S. W. 1102, where it is said:

"When a debtor makes a payment on a usurious contract, though it be a payment on the interest, he cannot recover for usurious interest paid unless the amount so paid exceeds the principal. In such cases the payments, when amounting to less or not more than the principal, the law applies to payments on the principal."

As we understand, these authorities are distinguished by Judge Williams in Rosetti v. Lozano, 96 Tex. 57, 70 S. W. 204, where the correct rule on the issue raised by appellants' proposition is thus stated, quoting syllabus:

"The right to recover back double the amount of usurious interest paid arises when such payments are intentionally appropriated by the parties to its discharge, and the party paying is not required to discharge the principal debt due before he can enforce such recovery."

On this question, Judge Williams said:

"The question referred to as decided in the first case cited is, whether or not a right of action for the penalty arises before the entire principal and usurious interest besides has been paid. In the case of Stout v. Bank, 69 Texas, 389, 390, the same question arose and was decided under the act of Congress before alluded to. The holding was that where the parties, as they did in this case, intentionally appropriate payments to the discharge of usurious interest, the right to the penalty arises and is fixed whether the principal debt has been paid or not. Nothing contrary to this was held in Loan Association v. Biering, 86 Texas, 476. The contract and transactions in that case took place before the act of 1892, giving the penalty in question, was enacted, and consequently involved no such question as the one before us. The decision simply declared the rule previously established, that where usurious interest had been charged and paid, since no interest could be allowed, payments, though made as interest, were to be applied to principal."

[10] (11) The court did not err in refusing to double the $4,000. This money was

never in the possession of McElvany and wife, nor was it paid out under their direction. The distribution had been made before the execution of the $19,000 note. It passed from the underwriters to the Federal Mortgage Company without the knowledge or consent of McElvany and wife. It was never intended by appellants that the title to this money should ever pass to McElvany and wife. It was nothing more than the usual efforts on the part of some money lenders to evade the usury law by adding a bonus to the face of the loan. While such a note is usurious, it does not subject the lender to the penalty of a double recovery. Gunter v. Merchant (Tex. Com. App.) 213 S. W. 604.

[11] (12) We sustain appellants' seventh proposition, which is as follows:

"All the original indebtedness paid by the Federal Mortgage Company and the liens securing it were extended and kept in force and effect by the mortgage dated January 1, 1917, and as so extended were not barred, and it being unnecessary to aid such original indebtedness and liens so extended by the note and deed of trust dated January 1, 1919, and by the Court condemned as usurious, such original indebtedness and liens so renewed, together with the interest thereon, were enforceable, and the owner of said indebtedness was entitled to recover judgment for such amount with interest thereon, notwithstanding the fact that the $19,000 note given in renewal thereof was found to have been tainted with usury."

On authority of Cain v. Bonner, 108 Tex. 399, 194 S. W. 1098, 3 A. L. R. 874, appellees concede that appellants had the right to abandon in toto their usurious note and mortgage and recover under their alternative plea on the original notes and lien unless such notes were barred by limitation. The trial court erred in holding that these note were barred. The original notes in the sum of $13,334.10 were assigned to the Federal Mortgage Company in writing. The recitations above given by us from the mortgage given to secure the $30,000 note expressly recognized that these notes had not been paid, and in our judgment constituted in writing a renewal of the original notes and lien. In order to renew these notes, it was not necessary, under article 5695, Texas Complete Statutes, that a formal renewal be executed. Any instrument in writing which by its terms manifests an intention to renew and extend the old notes is a compliance with the statute. Templeman & Son v. Kempner (Tex. Civ. App.) 223 S. W. 293. For the reasons above given, we think the item of $1,633.05 was also renewed and extended.

(13) It follows from what we have said that the trial court erred in refusing to enter judgment on the old notes. As our view of the case involves no issues not determined by the jury or the undisputed facts, we order that the following judgment be entered:

(1) That McElvany and wife recover $3,040 against the appellants, being double the amount of usurious interest paid by them; (2) that appellants recover judgment on the original indebtedness against McElvany and wife in the sum of $15,000, with interest at the rate of 7½ per cent. per annum, that being the interest rate provided for in the extension agreement, together with 10 per cent. attorney's fees; (3) that this sum be credited with the $3,040 usury; (4) that appellants have a foreclosure of their lien for the sum recovered by them, subject and inferior to the recovery of the State National Bank on the lien assigned them by Drought.